Filed 7/24/24  P. v. Farias CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESSIE FARIAS,<br><br>    Defendant and Appellant. | F086774<br><br>(Super. Ct. No. VCF036801C-95)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County.  Nathan G. Leedy, Judge.

Larenda R. Delaini, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Meehan, Acting P. J., Snauffer, J. and DeSantos, J.

# INTRODUCTION

In 1996, appellant and defendant Jessie Farias (appellant) was convicted of first degree murder, conspiracy to commit murder, attempted murder, and street terrorism, and sentenced to 25 years to life plus a determinate term.  In 2021 and 2022, appellant filed successive petitions for resentencing of his first degree murder conviction; the trial court summarily denied his petitions and he did not file appeals from those rulings.  In 2023, appellant filed a third petition for resentencing of both his murder and attempted murder convictions.  The court appointed counsel and conducted a hearing, and denied the petition for failing to state a prima facie case.

On appeal, appellate counsel filed a brief which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216.  Appellant submitted a letter brief raising several issues about the trial court's denial of his petitions.  We address his contentions and affirm the court's denial of his petition.

# FACTS[1]

"On the evening of May 25, 1995, Rigoberto Tapia was at home with his friend Orlando Azarte.  At approximately [8:00] p.m. [appellant] and [codefendant] Luis Amador arrived at Tapia's house in a green Volkswagen," and Amador asked to

---

[1]     After notice to the parties, and without objection, this court takes judicial notice of the record from appellant's direct appeal in *People v. Farias/In re Farias* (Sept. 30, 1998, F025710/F028690) [nonpub.opn.] (*Farias I*).  The following facts are from the nonpublished opinion in that case.

In reviewing a section 1172.6 petition, the trial court may rely on "the procedural history of the case recited in any prior appellate opinion."  (§ 1172.6, subd. (d)(3); *People v. Clements* (2022) 75 Cal.App.5th 276, 292; *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9.)  The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage.  (*Clements*, at p. 292; *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*).)  We have quoted the factual statement from appellant's direct appeal to place his current arguments in context, and do not rely on that factual statement to resolve his appeal from the court's order that found his petition did not state a prima facie case for relief.

borrow a gun because of a conflict with an Asian gang. "Tapia gave Amador a sawed-off shotgun wrapped in a towel. Amador put the gun in the green Volkswagen. [Appellant] commented that the gun was too big. [¶] Orlando Azarte's sister, Patricia, was Tapia's neighbor. [Appellant] came over and spoke to her after dark on May 25. [Appellant] and Amador left at 9:30 [p.m.] to 9:40 [p.m.]." (*Farias I*, *supra*, F025710/F028690.)

"Khampi Sayawong (Sayawong), Farm Saeleaw (Farm), Fong Xiong (Fong), and Pao Chua Yang (Yang) were playing cards on the hood of a car parked at Sayawong's home. Sayawong, Yang and Fong were members of a gang known as the Oriental Troop. Farm was Yang's girlfriend. Farm was facing the neighbor's yard as the group played cards. Farm saw [appellant] standing by a tree in a neighbor's yard staring at them. She could not see his hands because of the fence. Seconds later a shotgun was fired from the direction of the neighbor's yard where Farm had seen [appellant] standing. Yang fell to the ground with a fatal gunshot wound to his head. Sayawong received 10 to 12 shotgun pellets to his back." (*Farias I*, *supra*, F025710/F028690.)

"Sayawong saw [appellant] drive by in his green Volkswagen 'mad-dogging' approximately two hours before the shooting. Fong heard the Volkswagen drive by at approximately 9:30 p.m. Farm saw the Volkswagen pass by five minutes before the shooting. Just prior to the shooting, Farm saw a white truck make a U-turn and park at a neighbor's. Farm saw a person by the fence where the shot came from just prior to the shooting." (*Farias I*, *supra*, F025710/F028690, fn. omitted.)

## PROCEDURAL BACKGROUND

On November 17, 1995, an information was filed in the Superior Court of Tulare County charging appellant and Amador with count 1, murder of Yang (Pen. Code,[2] § 187, subd. (a)); count 2, conspiracy to commit murder with five overt acts (§ 182,

---

[2] All further statutory citations are to the Penal Code.

subd. (a)(1)); count 3, attempted murder of Sayawong (§§ 664/187, subd. (a)); and count 4, street terrorism (§ 186.22, subd. (a)).

As to counts 1 and 3, it was alleged as to Amador that he personally used a firearm, a sawed-off shotgun (§ 12022.5, subd. (a)); as to appellant, that he was a principal in the commission of the offenses where a coparticipant, Amador, was armed with a firearm (§ 12022, subd. (a)); and the offenses were committed for the benefit of a criminal street gang (§ 182.66, subd. (b)(1)).

On February 20, 1996, appellant's separate jury trial began.[3]

## JURY INSTRUCTIONS

### Aiding and Abetting

The trial court instructed the jury with CALJIC No. 3.00 that the persons concerned in the commission or attempted commission of a crime who are regarded by law as principals in the crime and "equally guilty," include [o]ne, those who actively and directly commit or attempt to commit the act constituting the crime; [¶] [o]r two, those who aid and abet the commission or attempted commission of the crime."

CALJIC No. 3.01 defined direct aiding and abetting: "A person aids and abets the commission or attempted commission of a crime when he or she; [o]ne, with knowledge of the unlawful purpose of the perpetrator; [¶] [a]nd two, with the intent or purpose of committing, encouraging, or facilitating the commission of the crime by act or advice aids, promotes, encourages or instigates the commission of the crime."

### Murder, Conspiracy, and Attempted Murder Instructions

As to count 1, murder, the trial court gave CALJIC No. 8.10 on the elements of murder; CALJIC No. 8.11 that defined express and implied malice; CALJIC No. 8.20

---

**3** Amador was separately tried and convicted of murder, conspiracy, attempted murder, and street terrorism. His convictions were affirmed by this court in 1998.

4.

that a willful, deliberate, and premeditated murder was first degree murder, and defined the terms; and CALJIC No. 8.30 that unpremeditated murder was second degree murder.

As to count 2, conspiracy to commit murder, CALJIC No. 6.10 defined the charged offense as an agreement entered into between two or more persons "with a specific intent to agree *to commit the public offense of murder* and with a further specific intent to commit such offense followed by an overt act committed … by one or more of the parties for the purpose of accomplishing the object of the agreement."  (Italics added.) CALJIC No. 6.16 stated that where a conspirator "commits an act which is neither in furtherance of the object of the conspiracy nor the natural and probable consequence of an attempt to attain that object, he alone is responsible for and is bound by that act, and no responsibility, therefore, attaches to any of its confederates."

As to count 3, CALJIC No. 8.66 defined the elements of attempted murder: "One, a direct but ineffectual act was done by one person towards killing of another human being; [¶] [a]nd two, the person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."  The jury was instructed that assault with a firearm was a lesser included offense of count 3, attempted murder.

The jury was not instructed on the felony-murder rule, or any target or nontarget offenses.  The language in CALJIC No. 6.16 was the only instructional reference to natural and probable consequences.

**Convictions and Sentence**

On March 4, 1996, the jury found appellant guilty as charged of count 1, first degree murder, count 2, conspiracy to commit murder with the overt acts found true, count 3, attempted murder, and count 4, street terrorism, and found true the allegations attached to counts 1 and 3:  the gang enhancement (§ 186.22, subd. (b)(1)), and that appellant was a principal in the offense during which coparticipant Amador personally used a firearm (§ 12022, subd. (a)).

5.

On April 1, 1996, the trial court sentenced appellant to the midterm of seven years for count 3, attempted murder, plus two years for the attached gang enhancement; a consecutive term of 25 years to life for count 1, first degree murder, plus two years for the gang enhancement; and stayed the terms for the remaining charges and enhancements.

On April 2, 1996, the trial court filed an order amending the abstract of judgment "to reflect the following as to Count 1," that he was sentenced to 25 years plus two years for the gang enhancement, and one year for the firearm enhancement.

**Direct Appeal/Habeas Petition**

After his convictions, appellant filed both an appeal and a petition for writ of habeas corpus that were consolidated. In *Farias I*, *supra*, F025710/F028690, this court affirmed appellant's convictions and denied his habeas contentions. We rejected his arguments that the trial court committed prejudicial error when it admitted Amador's hearsay statements; the court failed to bifurcate the gang allegations from the substantive offenses; the gang evidence was prejudicial; the court failed to give a limiting instruction on the gang evidence; defense counsel was prejudicially ineffective for failing to object to evidence; defense counsel's failure to make numerous challenges to the gang offense and enhancement; the court erroneously instructed the jury on transferred intent for count 3, attempted murder; insufficient evidence existed to support the attempted murder conviction; and the reasonable doubt instruction was vague and unconstitutional.

As to appellant's sentence, "[appellant] contends and respondent concedes that the abstract of judgment should be modified striking the two-year consecutive sentence for the section 186.22, subdivision (b) [gang] enhancement and reflecting a sentence of 26 years to life with a minimum parole eligibility date of 15 years for count one, the murder of Yang." We ordered the trial court "to correct the abstract to reflect that the section 186.22, subdivision (b), enhancement imposes a minimum parole date rather than an additional term of years." We also ordered the abstract corrected to reduce the restitution fine from $10,000 to $200. (*Farias I*, *supra*, F025710/F028690.)

6.

## PETITIONS FOR RESENTENCING

### First Petition

On February 11, 2021, appellant filed, in propria persona, a petition for resentencing pursuant to former section 1170.95, using a preprinted form and checked boxes indicating he was convicted of murder under a theory of felony murder or the natural and probable consequences doctrine; he could not now be convicted of murder because he was not the actual killer; and he did not aid and abet the actual killer, act with reckless indifference to human life during the course of the crime, and was not a major participant. Appellant requested appointment of counsel.

On February 23, 2021, the trial court summarily denied appellant's petition for resentencing without prejudice, because he was not prosecuted under a theory of felony murder or natural and probable consequences. Appellant did not file an appeal from the court's order.

### Second Petition

On March 14, 2022, appellant, in propria persona, filed another petition for resentencing pursuant to former section 1170.95, again using a preprinted form and checked boxes that he was convicted of first or second degree murder under a theory of felony murder or the natural and probable consequences doctrine, and he could not now be convicted of murder, and requested appointment of counsel.

In support of the petition, appellant filed a separate brief, also in propria persona, and reasserted evidentiary and ineffective assistance claims that were already addressed in his direct appeal.

On March 19, 2022, the trial court summarily denied appellant's second petition for failing to state a prima facie case for relief because "the record establishes that he was convicted of conspiracy to commit murder, which establishes that he acted with the intent to kill." Appellant did not file an appeal from the order.

**CURRENT PETITION**

The instant appeal is from appellant's third petition for resentencing that was filed, in propria persona, on June 28, 2023, pursuant to amended section 1172.6. Appellant filed a supporting declaration that the instructions permitted the jury to convict him of murder and attempted murder based on an imputed malice theory. He requested appointment of counsel.

As a supporting exhibit, appellant attached a letter he sent to the trial court on June 20, 2023, that stated the court erroneously denied his prior petitions, and requested the court not summarily dismiss his current petition because his conviction for attempted murder was now eligible for resentencing under amended section 1172.6, and the court's denial of his prior petitions did not foreclose his challenge to the attempted murder conviction.

The trial court appointed the public defender to represent appellant and ordered briefing.

**The Prosecution's Opposition**

On July 7, 2023, the prosecution filed opposition and argued appellant was ineligible for resentencing on his murder conviction because he was convicted of conspiracy to commit murder, which required the jury to find he had the intent to kill, and the jury was not instructed on felony murder or the natural and probable consequences doctrine. The prosecution's opposition did not address his conviction for attempted murder.

**The Trial Court's Hearings and Denial of the Petition**

On August 8, 2023, the trial court held a hearing on the petition, and stated it had reviewed the jury instructions and the prior denials of his petitions for resentencing. The court noted appellant never filed appeals from the prior orders.

The trial court said the jury did not receive felony-murder or natural and probable consequences instructions that would have allowed the jury to impute malice to appellant.

"It was a straight murder and classic aiding and abetting prosecution.  He was also convicted of a conspiracy to commit murder."

The deputy public defender stated he was appearing for the attorney who was assigned to appellant's case, and asked for a continuance for the assigned attorney to appear and address the merits.  The deputy public defender further stated that appellant was also convicted of attempted murder, and that offense was now eligible for resentencing after section 1172.6 was amended.  The trial court granted the continuance.

On August 10, 2023, the trial court reconvened the hearing on appellant's petition.  Appellant's public defender stated CALJIC No. 8.66, the attempted murder instruction, was "ambiguous" as to whether appellant committed the offense, and she was not sure whether that ambiguity made appellant eligible for resentencing.

The trial court denied appellant's petition:

> "The issue here … is that this appears to be one transaction wherein one person was shot and killed and other people were shot at apparently.  [Appellant] was convicted of the murder, the attempted murder but also conspiracy to commit murder which indicates he had the intent to kill.
>
> "That finding under the conspiracy conviction to me seems to preclude relief under [section] 1172.6 because the jury necessarily found that he had the intent to kill.  [¶]  I didn't see any felony murder instructions.  I didn't see any natural and probable consequences instructions.  [¶]  So the short of it as I see it is the jury found he had the intent to kill, and they did not have a way to impute malice to him.  They might not have found that he was the shooter personally but that he was a part of this plot to kill.  [¶]  …  [¶]  That's in addition to the fact he has already filed a petition which was denied a couple of years ago, and I think the proper procedural option for him would have been to appeal the denial as opposed to filing another petition at this point."

Appellant's counsel said appellant was permitted to file another petition because the statutory amendments included attempted murder as an eligible offense for resentencing.  The trial court again stated it was denying the petition because it did not

see "an avenue of relief" since appellant was also convicted of conspiracy to commit murder.

On August 24, 2023, appellant filed a timely notice of appeal.

## DISCUSSION

As explained above, appellate counsel filed a brief with this court pursuant to *Delgadillo*. The brief also included counsel's declaration that appellant was advised he could file his own brief with this court. This court advised appellant that he could file a supplemental letter brief. Appellant filed a letter brief and raises several issues about the denial of his multiple petitions.

## I. Senate Bill Nos. 1437 and 775

"Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) [Senate Bill 1437] amended the felony-murder rule by adding section 189, subdivision (e). [Citation.] It provides that a participant in the qualifying felony is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. [Citation.] The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*People v Harden* (2022) 81 Cal.App.5th 45, 50–51; *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," initially codified in former section 1170.95. (*Strong*, *supra*, 13 Cal.5th at p. 708.) The original version of the statute permitted "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the

10.

other legislative changes implemented by Senate Bill … 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

Effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) amended former section 1170.95 and " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.) The amended statute also required the trial court to appoint counsel upon request, provide for briefing, and conduct a hearing to make the prima facie determination. (*Birdsall*, at p. 865; *Vizcarra*, at p. 388.) Former section 1170.95 was later renumbered as section 1172.6 without further substantive change. (*Strong*, *supra*, 13 Cal.5th at p. 708, fn. 2; *People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.)

Section 1172.6, subdivision (a) thus states:

> "(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

>> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

>> "(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)[4]

The trial court shall appoint counsel if requested by petitioner. (§ 1172.6, subd. (b)(3).) After service of the petition, the prosecutor shall file and serve a response. The petitioner may file and serve a reply after the response is served. (*Id*., subd. (c).)

"After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

In making the prima facie determination, a petitioner is ineligible for resentencing "as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations," that the petitioner could still be convicted after the amendments to sections 188 and 189. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13–14.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

The prima facie determination is a question of law, and the trial court may deny a petition at the prima facie stage if the petitioner is ineligible for resentencing as a matter of law. (*Lewis*, *supra*, 11 Cal.5th at p. 966.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id*. at

---

[4]     While not applicable herein, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f).)

p. 971.)  The record of conviction includes the jury instructions, verdicts, and closing arguments of the attorneys.  (*People v. Lopez*, *supra*, 78 Cal.App.5th at pp. 13–14; *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251–1252; *People v. Harden*, *supra*, 81 Cal.App.5th at pp. 50, 54–55; *People v. Ervin* (2021) 72 Cal.App.5th 90, 99; *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935; *People v. Offley* (2020) 48 Cal.App.5th 588, 599.)

*Lewis* announced a prejudicial error standard under *People v. Watson* (1956) 46 Cal.2d 818, that if the trial court failed to appoint counsel or violated the petitioner's statutory rights under section 1172.6, the petitioner must " 'demonstrate there is a reasonable probability that in the absence of the error he [or she] … would have obtained a more favorable result.' " (*Lewis*, *supra*, 11 Cal.5th at p. 974; *Watson*, at p. 836.)

## II.  Appellant's Multiple Petitions

We begin with the question of whether appellant should have filed successive petitions for resentencing.

A petitioner may file a successive petition under section 1172.6 if it is based on new legal authority.  (*People v. Farfan* (2021) 71 Cal.App.5th 942, 946–947, 950–951.) *Farfan* held the defendant in that case could file a successive petition after the Supreme Court's ruling in *Lewis*, which demonstrated the "still-evolving state of [former section] 1170.95 jurisprudence," such that a second petition was not barred by collateral estoppel.  (*Farfan*, at p. 950.)  While *Farfan* held the defendant in that case could file a second petition, it also held defendant was still ineligible for relief as a matter of law based upon the jury's findings.  (*Id*. at p. 947.)

In 2021, appellant filed his first petition pursuant to former section 1170.95 for resentencing of his murder conviction.  The trial court summarily denied it without appointing counsel or conducting a hearing.  At that time, former section 1170.95 was being interpreted to permit the court to make factual findings and summarily deny the

petition without appointing counsel, conducting a hearing, or issuing an order explaining its reasons.  (See, e.g., *Lewis*, *supra*, 11 Cal.5th at pp. 957−958.)

*Lewis* was decided in July 2021 and addressed the prima facie finding.  (*Lewis*, *supra*, 11 Cal.5th 952.)  The amendments to section 1172.6 that expanded resentencing to include attempted murder convictions, and codified the requisite procedures for the trial court to make the prima facie determination, including appointment of counsel, briefing, and a hearing, became effective as of January1, 2022.  In March 2022, appellant filed his second petition for resentencing that was limited to his murder conviction.  The court filed another order that summarily denied the petition without complying with section 1172.6; appellant did not file an appeal.

In June 2023, appellant filed his third petition for resentencing, but this time stated he was seeking relief for both his murder and attempted murder convictions.  The trial court complied with section 1172.6 and appointed counsel, provided for briefing, and held a hearing.  Appellant's attorney argued the third petition was cognizable because section 1172.6 had been amended to permit resentencing of his conviction for attempted murder.  The court again denied the petition.

As in *Farfan*, appellant was permitted to file the second and third petitions because there were new statutory and case authorities that did not exist at the time the trial court summarily denied his first petition in 2021.  Whether his third petition was meritorious is a different question.

### III.  Appellant's Contentions

We now turn to the trial court's denial of appellant's petition for resentencing of his convictions for murder and attempted murder, and the contentions raised in his letter brief.

14.

## A.  Murder and Conspiracy to Commit Murder

While appellant did not file an appeal after the denial of his second petition, we briefly address the second petition because it is relevant to the issues raised in his third petition.

The trial court's failure to comply with section 1172.6's procedural requirements when it denied his second petition was not prejudicial because appellant was ineligible for resentencing on his first degree murder conviction as a matter of law.  "[C]onspiracy to commit murder can only take a single form:  It 'requires a finding of unlawful intent to kill, i.e., express malice' [citation] and 'is necessarily conspiracy to commit premeditated and deliberated first degree murder[.]' "  (*People v. Ware* (2022) 14 Cal.5th 151, 167.) "[A]ll conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder ...."  (*People v. Cortez* (1998) 18 Cal.4th 1223, 1237; *People v. Medrano* (2021) 68 Cal.App.5th 177, 183; *People v. Beck & Cruz* (2019) 8 Cal.5th 548, 641.)  "A jury's finding that a defendant is guilty of conspiracy to murder, *when a murder has in fact been committed*, is 'in effect [a finding] that [the defendant] was a direct aider and abettor of the killings.' "  (*People v. Whitson* (2022) 79 Cal.App.5th 22, 36, italics added.)

The jury herein was correctly instructed on murder and conspiracy to commit murder, and CALJIC No. 3.01 on direct aiding and abetting.  Direct aiding and abetting was not eliminated by the amendments enacted by Senate Bills 1437 and 775 "because a direct aider and abettor to murder must possess malice aforethought."  (*People v. Gentile* (2020) 10 Cal.5th 830, 848 (*Gentile*).)  By convicting appellant of conspiracy to commit murder, the jury necessarily concluded that appellant harbored express malice for murder. (*People v. Beck and Cruz*, *supra*, 8 Cal.5th at p. 642.)  Appellant was thus ineligible for resentencing on his convictions for murder and conspiracy to commit murder as a matter of law, and the trial court's previous failure to comply with section 1172.6 when it summarily denied his second petition was not prejudicial.

15.

We note that appellant's second petition also raised evidentiary and ineffective assistance claims from his trial. Such issues are not cognizable in a section 1172.6 petition. "The mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings. To the contrary, '[n]othing in the language of section [1172.6] suggests it was intended to provide redress for allegedly erroneous prior factfinding.… The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*People v. Farfan*, *supra*, 71 Cal.App.5th at p. 947; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.)

## B.  Attempted Murder

In his letter brief, appellant argues that as a result of the amendments enacted by Senate Bill 775, his conviction for attempted murder became eligible for resentencing and the trial court should have found his third petition stated a prima facie case. Appellant asserts the court erroneously relied on his conspiracy conviction to find his conviction for attempted murder was not based on imputed malice.

"Generally, a defendant may be convicted of a crime either as a perpetrator or as an aider and abettor. [Citation.] An aider and abettor can be held liable for crimes that were intentionally aided and abetted (target offenses); an aider and abettor can also be held liable for any crimes that were not intended, but were reasonably foreseeable (nontarget offenses). [Citation.] Liability for intentional, target offenses is known as 'direct' aider and abettor liability; liability for unintentional, nontarget offenses is known as the ' " 'natural and probable consequences' doctrine." ' " (*In re Loza* (2018) 27 Cal.App.5th 797, 801; *People v. Williams* (2015) 61 Cal.4th 1244, 1268.)

Under the direct theory, the prosecution "must show that the defendant acted 'with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either

16.

of committing, or of encouraging or facilitating commission of, the offense.' " (*People v. Gomez* (2018) 6 Cal.5th 243, 279.) "Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*Gentile*, *supra*, 10 Cal.5th at p. 848.)

Prior to Senate Bill 1437's enactment, a person who knowingly aided and abetted a crime (the target offense), the natural and probable consequences of which was attempted murder or murder (the nontarget offense), could be convicted of not only the target crime but also of the resulting nontarget offense of attempted murder or murder. (*People v. Chiu* (2014) 59 Cal.4th 155, 161, 166; *Gentile*, *supra*, 10 Cal.5th at pp. 843, 845; *People v. Prettyman* (1996) 14 Cal.4th 248, 259, 262; *People v. Coley* (2022) 77 Cal.App.5th 539, 548.)

Senate Bill 775 amended former section 1170.95 "to make clear the natural and probable consequences doctrine no longer supplies accomplice liability to attempted murder." (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 193.) "Because section 188, subdivision (a)(3), prohibits imputing malice based solely on participation in a crime, the natural and probable consequences doctrine cannot prove an accomplice committed attempted murder. Accordingly, the natural and probable consequences doctrine theory … is now invalid." (*Sanchez*, at p. 196; *People v. Coley*, *supra*, 77 Cal.App.5th at p. 548.)

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Booker* (2011) 51 Cal.4th 141, 177–178; *People v. Mendoza* (1998) 18 Cal.4th 1114, 1123.) "Intent to unlawfully kill and express malice are, in essence, 'one and the same.' " (*People v. Smith* (2005) 37 Cal.4th 733, 739.) Implied malice cannot support a conviction of attempted murder. (*People v. Bland* (2002) 28 Cal.4th 313, 327.)

The entirety of the instructions refute appellant's claim that he was convicted of attempted murder as an aider and abettor based on imputed malice. The jury was

correctly instructed on the elements of attempted murder, and CALJIC No. 3.01 on direct aiding and abetting. The jury was not instructed on indirect aiding and abetting, or any target or nontarget offenses as to aiding and abetting or conspiracy.

We note that in defining count 2, conspiracy to commit murder, CALJIC No. 6.16 stated that where a conspirator "commits an act which is neither in furtherance of the object of the conspiracy nor the natural and probable consequence of an attempt to attain that object, he alone is responsible for and is bound by that act, and no responsibility, therefore, attaches to any of his confederates."

The jury could not have relied on this language to convict appellant of attempted murder as the natural and probable consequence of conspiracy under an imputed malice theory. The conspiracy instructions identified only one target offense—first degree murder—and did not identify any nontarget offenses. Under the conspiracy instructions in this case, the target offense was first degree murder because appellant was charged and convicted of conspiracy to commit first degree murder. "[C]onspiracy is a specific intent crime requiring both an intent to agree or conspire and a further intent to commit the target crime or object of the conspiracy." (*People v. Cortez* (1998) 18 Cal.4th 1223, 1232.) If the jury relied on the language in CALJIC No. 6.16, it still would have been required to find appellant acted with express malice and intent to kill to convict him of attempted murder.

## C. CALJIC No. 3.00

Appellant argues his petition stated a prima facie case as to attempted murder because CALJIC No. 3.00 defined aiding and abetting using the now-rejected phrase "equally guilty," which allowed the jury to rely on imputed malice to convict him of attempted murder as an aider and abettor.

As given in this case, CALJIC No. 3.00 stated that the persons concerned in the commission or attempted commission of a crime, who are regarded by law as principals in the crime and "equally guilty," include "[o]ne, those who actively and directly commit

18.

or attempt to commit the act constituting the crime; [¶] [o]r two, those who aid and abet the commission or attempted commission of the crime."

This instruction "generally stated a correct rule of law. All principals, including aiders and abettors, are 'equally guilty' in the sense that they are all criminally liable." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433.) Appellant is correct, however, that the "equally guilty" language was subsequently criticized and removed from the instructions. (See, e.g., *People v. Johnson* (2016) 62 Cal.4th 600, 638 (*Johnson*).)

As to his imputed malice claim, the Supreme Court has rejected the argument that the "equally guilty" phrase allowed a jury to convict an aider and abettor based on the perpetrator's culpability, without considering the aider and abettor's own mental state. (*Johnson*, *supra*, 62 Cal.4th at pp. 638–642.) *Johnson* held that where a jury was also instructed on direct aider and abettor liability, "there was no reasonable likelihood the jurors would have understood the 'equally guilty' language … to allow them to base [the] defendant's liability for first degree murder on the mental state of the actual shooter, rather than on [the] defendant's own mental state in aiding and abetting the killing." (*Johnson*, at p. 641; *People v. Burns* (2023) 95 Cal.App.5th 862, 867–869.)

The jury was instructed on direct aiding and abetting, and the entirety of the instructions and the jury's guilty verdict establish that it convicted appellant of attempted murder based on his own express malice and intent to kill. There is no reasonable likelihood the jurors would have understood the "equally guilty" language to rely on imputed malice to convict him of attempted murder.

## D.  CALJIC No. 17.31

Appellant argues that even if CALJIC No. 3.01 correctly defined direct aiding and abetting, CALJIC No. 17.31 permitted the jury to ignore the correct definition and erroneously rely on CALJIC No. 3.00's "equally guilty" language to convict him of attempted murder based on imputed malice.

CALJIC No. 17.31 did not address the charged offenses or aiding and abetting. Instead, it was a pattern instruction that stated: "The purpose of the Court's instructions is to provide you with the applicable law so you may arrive at a just and lawful verdict. Whether some instructions apply will depend upon what you find to be the facts. Disregard any instructions which applies to facts determined by you not to exist.…"

CALJIC No. 17.31 "does not render an otherwise improper instruction proper," but "it may be considered in assessing the prejudicial effect of an improper instruction." (*People v. Saddler* (1979) 24 Cal.3d 671, 684; *People v Covarrubias* (2016) 1 Cal.5th 838, 933.) As already explained, the Supreme Court has held any confusion resulting from the "equally guilty" phrase is not prejudicial where the jury was correctly instructed on direct aiding and abetting. (*Johnson*, *supra*, 62 Cal.4th at pp. 638–642.) We presume the jury followed the court's instructions. (*People v. Chhoun* (2021) 11 Cal.5th 1, 30.)

## E.  Ineffective Assistance

Finally, appellant argues his appellate attorney in this matter was prejudicially ineffective for filing an appellate brief pursuant to *Delgadillo*, and not raising the issues that he raised in his letter brief. The entirety of the record establishes defendant was ineligible for relief of resentencing for murder, conspiracy to commit murder, and attempted murder as a matter of law, and an attorney is not ineffective for failing to raise meritless objections or motions. (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1024.)

## DISPOSITION

The trial court's order of August 10, 2023, denying appellant's third petition for resentencing, is affirmed.